**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

FERRARI NORTH AMERICA, INC.,

              Plaintiff,

v.

ST. LOUIS MOTORSPORTS, LLC and
BENTLEY HOLDINGS, LLC,

              Defendants.

Document Electronically Filed

Civil Action No. _____

## COMPLAINT FOR DECLARATORY JUDGMENT

By this complaint, plaintiff, Ferrari North America, Inc. ("Ferrari" or "FNA"), seeks a declaration that St. Louis Motorsports, LLC ("Motorsports") is not an authorized Ferrari new vehicle sales dealership; that FNA has no legal obligation to appoint Motorsports as an authorized dealer to be able to sell new Ferrari vehicles; that FNA has no legal liability to Motorsports or Bentley Holdings LLC ("Holdings") for any failure to appoint Motorsports as an authorized sales dealer under the Automobile Dealer Day in Court Act, 15 U.S.C. §1221, *et seq*., the Missouri Motor Vehicle Franchise Practices Act, §407.810, *et seq*., the New Jersey Franchise Practices Act, N.J.S.A. §56:10 or other applicable law; that FNA has no liability to Motorsports or Holdings for civil RICO in violation of 18 U.S.C. § 1962(c); and that the Ferrari service-only agreement with Motorsports dated as of May 26, 2005 is, by its terms, currently on a month-to-month basis and may be terminated by FNA with or without cause, without liability.

### I.      PARTIES

1.     Plaintiff, Ferrari North America, Inc. is a Delaware corporation with its principal place of business at 250 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

2.     Defendant, St. Louis Motorsports, LLC is a Delaware limited liability company with a place of business at One Arnage Boulevard, St. Louis, Missouri 63005. Upon information and belief Motorsports is comprised of two individual members, both of whom are citizens of Missouri.

3.      Defendant, Bentley Holdings, LLC ("Holdings") is a Missouri limited liability company with a place of business at One Arnage Boulevard, St. Louis, Missouri 63005. Upon information and belief Motorsports is comprised of two individual members, both of whom are citizens of Missouri. Upon information and belief Holdings owns all of the stock of Motorsports. Upon information and belief, the individual members of Motorsports and Holdings are the same.

## II.      JURISDICTION

4.      This is an action for declaratory judgment in a case of actual controversy and is brought pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil to determine the respective rights and liabilities of the parties under 15 U.S.C. §§1221 et seq., and applicable state law.

5.      The Court has jurisdiction pursuant to 28 U.S.C. §1331 because this case arises under 15 U.S.C. §§1221 et seq. (the "Automobile Dealers' Day in Court Act") and 18 U.S.C. § 1862(c) (civil RICO); and the Court has supplemental jurisdiction over any state law claims set forth herein pursuant to 28 U.S.C. §1367.

## III.      FACTUAL ALLEGATIONS

### A.      FNA's Authorized Dealer Network in the U.S.

6.      FNA is the exclusive North American importer and distributor of new Ferrari vehicles and genuine Ferrari parts and accessories. Through a formal appointment process, FNA has established a network of dealers authorized to sell new Ferrari vehicles and to provide authorized service. FNA authorizes a dealer to sell new Ferrari vehicles by entering into a formal written dealer agreement, which is consistent with state law requiring a written agreement for an entity to be an authorized motor vehicle dealer.

7.      Maserati North America, Inc. ("Maserati" or "MNA") is the exclusive North American importer and distributor of Maserati vehicles. Through a formal appointment process, MNA has established a network of dealers authorized to sell new Maserati vehicles and to

provide authorized service.  MNA does not authorize dealers to sell new Maserati vehicles except by entering into a formal written dealer agreement.

8.      At all relevant times, FNA and MNA were separate but affiliated corporate entities.  Prior to mid-2005, certain individuals were officers and/or employees of both.

**B.      Establishment of the Maserati Dealer Network.**

9.      In late 2001, Maserati sought to re-enter the U.S. market and establish a network of authorized Maserati dealers.  To establish the Maserati dealer network, MNA initially chose to offer Maserati dealerships to the then-existing authorized Ferrari dealers in good standing.

10.     In late 2001, after public reports of the anticipated return of the Maserati brand to the U.S. market, representatives of Motorsports, which was not an authorized Ferrari or Maserati dealer, wrote to MNA to inquire about being appointed as a Ferrari or Maserati dealer in St. Louis.  At all relevant times, Messrs. Graham Hill and James Mills held themselves out as representatives of Motorsports.

11.     Motorsports, after being advised by FNA that Ferrari had no interest or intention to appoint a Ferrari dealer in St. Louis, continued its pursuit of being named a Maserati dealer in St. Louis.  By letter dated December 4, 2001, Motorsports specifically expressed an interest in a Maserati dealership as a compliment to the Bentley dealership it was establishing.

12.     By letter dated January 31, 2002, Motorsports again contacted MNA about a Maserati dealership stating that "[w]e are extremely interested in representing Maserati in the St. Louis area. . . ."

13.     After submitting the January 31, 2002 letter, Messrs. Hill and Mills traveled to New Jersey to meet with MNA officials.  Mr. Hill and Mr. Mills confirmed that Motorsports was building a luxury car dealership in St. Louis, that it had room for a second stand-alone showroom and service area, and that it was interested in becoming a Maserati dealer.  MNA told Motorsports that it might consider adding a Maserati dealership in St. Louis in 2003.

14.     In early 2003, Motorsports contacted MNA and reaffirmed its interest in being considered for a Maserati dealership in St. Louis.

3

15.     By letter dated March 27, 2003, MNA issued to Motorsports a letter of intent outlining the terms and conditions pursuant to which MNA would consider appointing Motorsports as an authorized Maserati dealer.  A true and accurate copy of the March 27, 2003 Maserati Letter of Intent (the "Maserati LOI") is attached hereto as Exhibit A.

16.     Among other things, the Maserati LOI (i) required Motorsports to submit to MNA a completed "Maserati Application for Authorized Dealer Agreement;" (ii) confirmed that MNA's approval was "contingent upon a satisfactory review and approval" by MNA of that application; and (iii) required Motorsports to submit a specific marketing and business plan outlining Motorsports' plans "to market, sell and service Maserati vehicles. . . ."  *See* Exhibit A, ¶¶3, 5, 16.

17.     The Maserati LOI also confirmed that it did not constitute a Maserati dealer agreement and that Motorsports would "only obtain the right to sell and service new Maserati vehicles at such time that [Motorsports] and Maserati North America execute[d] a Maserati Dealer Agreement."  *See* Exhibit A, ¶18.

18.     As a part of the process outlined in the Maserati LOI, Motorsports filled out and submitted to MNA a formal application and a detailed business plan setting forth Motorsports plan for operating a Maserati dealership in St. Louis.  A true and accurate copy of the Motorsports Maserati Business Plan is attached hereto as Exhibit B.

19.     In 2003, Motorsports was approved as an authorized Maserati dealer and entered into a written Maserati Dealer Sales and Service Agreement (the "Maserati Dealer Agreement"). A true and accurate copy of the Maserati Dealer Agreement is attached hereto as Exhibit C.

20.     In early 2004, Motorsports notified MNA that it had also acquired Lotus and Rolls Royce dealerships.  As of 2010, in addition to Maserati, upon information and belief, Motorsports had applied for, and been granted, written dealer agreements with Bentley, Rolls-Royce, Lamborghini, Bugatti, Lotus and Aston Martin.

**C.**   **Motorsports Applies for Ferrari Service-Only Agreement.**

21.     In 2004, Motorsports expressed to FNA its desire to be appointed as a "service only" dealer for Ferrari.  A "service only" Ferrari dealer is not authorized to engage in the sale of new Ferrari vehicles and is only authorized to service Ferrari vehicles.

22.     By letter dated June 20, 2004, FNA wrote Motorsports regarding its request to become an authorized Ferrari service dealer.   FNA informed Motorsports that it would "reevaluate your dealership for a Ferrari service point at a later date" in part because "in order to be considered for a Ferrari service point, Maserati St. Louis must first comply with all Maserati North America policies," and there were several deficiencies.

23.     At a meeting on December 1, 2004, Motorsports and representatives of FNA discussed the potential appointment of Motorsports as a Ferrari service-only dealer.

24.     Motorsports followed up on the December 1, 2004 meeting by letter dated December 13, 2004.  In that letter Motorsports stated that it understood that FNA would make a decision about appointing Motorsports as an authorized Ferrari service only dealer by the end of January 2005.  Motorsports also asserted its understanding that "allocation issues will delay a decision on appointing us as a sales dealership until early 2006."

25.     By letter dated February 16, 2005, FNA wrote to Motorsports and offered, subject to certain considerations "to enter into a 2-year service-only agreement with [Motorsports] (no sales of new Ferrari vehicles will be included), which will be renewable at FNA's discretion."  A true and accurate copy of the February 16, 2005 letter is attached hereto as Exhibit D.

26.     FNA's February 16 letter also stated that Motorsports must submit to FNA a business plan reflecting an evaluation by Motorsports of its ability to receive "an adequate return on [its] investment before making any decision to become a service-only Ferrari point."  *See* Exhibit D.

27.     FNA's February 16, 2005 offer letter made clear that the Motorsports evaluation of the Ferrari opportunity must be based solely on a service-only dealership because FNA did not intend to offer Motorsports a sales dealership.  The February 16, 2005 letter stated: "while we are willing to enter into the [service-only] agreement as described above, we do not want you

to invest in this venture if you do not believe that you will obtain an adequate return on your investment, considering that we will not be offering you the new car sales point." *See* Exhibit D.

28.     By letter dated February 23, 2005, Motorsports responded to FNA's February 16 letter.  Motorsports claimed that FNA had already committed to approving Motorsports as a Ferrari service dealer and "after we have shown a good performance record, we would expect to be considered for Ferrari new car sales."

29.     By letter dated March 8, 2005, FNA responded to Motorsports' February 23, 2005 letter and, in particular, to Motorsports' assertions regarding the prospect of being considered for a Ferrari sales dealership.  In his March 8, 2005 letter, the President and CEO of FNA confirmed that the FNA offer was on the terms as stated in the earlier February 16 letter and further stated "I would like to again make clear that FNA has no present intention to open a sales point in the St. Louis market.  Even if you prove to be an excellent servicing dealer (which we certainly hope will be the case) that will not serve as any guaranty that you would ever be offered the opportunity to become an authorized Ferrari new car sales facility.   While the possibility exists for such an appointment, there is no certainty that this will ever occur."  A true and accurate copy of the March 8, 2005 letter from FNA is attached hereto as Exhibit E.  FNA has never sent a letter revoking either its February 16, 2005 letter or its March 8, 2005 letter and has never sent any letter to Motorsports that promised Motorsports that it would become an authorized Ferrari sales dealer.

30.     Having received FNA's March 8, 2005 letter, Motorsports accepted the February 16 offer and submitted to FNA its business plan for the proposed Ferrari service-only operations. A copy of Motorsports' March 8, 2005 letter and accompanying Service-Only Business Plan is attached hereto as Exhibit F.   The Ferrari Service-Only Business Plan was not based on Motorsports also being approved as a Ferrari sales dealer.  The Motorsports letter stated, "we are very excited about the prospect of becoming" a Ferrari service point.  By its letter and Business Plan, Motorsports represented to FNA that (i) it was accepting the prospect of being a service-only Ferrari dealership with no promise or understanding that it would ever be an authorized

Ferrari sales dealer; and (ii) that it believed that a Ferrari service-only dealership made sense, was low risk, and would likely be a profitable venture for Motorsports.

31.     Motorsports was represented by an attorney in connection with its appointment by FNA as a service-only dealer and the negotiation with FNA of the service-only agreement.

**D.     FNA Appoints Motorsport As A Service Only Dealer, Not a Sales Dealer.**

32.     On or about May 26, 2005, Motorsports executed the Ferrari service-only agreement for St. Louis Motorsports to become a factory-authorized service-only point for Ferrari (the "Service-Only Agreement").  A copy of the Service-Only Agreement is attached hereto as Exhibit G.

33.     Pursuant to the Service-Only Agreement, Motorsports was not authorized to sell new Ferrari vehicles or otherwise hold itself out as a new sales dealer for Ferrari vehicles.  There is not, and never was, a written agreement appointing it as an authorized sales dealer for Ferrari vehicles.   The Service-Only Agreement provides that it "supersedes all prior agreements between the parties relative to the sale and servicing of Company Products.  This Agreement contains the entire, integrated Agreement between the parties and any amendment, modification or waiver of any provision of this Agreement must be in writing and signed by an Officer, and on behalf of Service-Only Dealer by a person identified in Section 2A."

34.     The Service-Only Agreement also provides that it is "for a period of two (2) years unless the parties mutually terminate in writing, or it is terminated as otherwise provided herein . . . . [and] [a]fter the two-year period, [FNA] may, in its sole discretion, allow the Agreement to expire, or it may offer Service-Only Dealer the opportunity to continue to be a Service-Only Dealer, on such terms upon which [FNA] and Service-Only Dealer may agree."

35.     The Service-Only Agreement also provides that "the term of this Agreement may be extended only by written agreement between the parties, signed by an Officer of the Company.  If the parties continue their business relationship after this Agreement expires, the relationship will be on a month-to-month basis only, and all other terms of this Agreement will be applicable."

36.     By letter dated January 30, 2008, FNA agreed to extend the terms of the Service-Only Agreement to May 2009.  A true and accurate copy of FNA's January 30, 2008 letter extending the Service-Only Agreement is attached hereto as Exhibit H.  There has been no other writing from FNA, signed by an officer, extending the term of the Service-Only Agreement.

37.     Since May 2009, the Service-Only Agreement has been on a month-to-month basis.  FNA has the right to terminate the Service-Only Agreement by giving notice that it is terminated at the end of the next-following month.

**E.      Motorsports Demands that FNA Appoint it as a Ferrari Sales Dealer.**

38.     On December 1, 2010, representatives of FNA and Motorsports met in New Jersey to discuss the Motorsports dealership.

39.     At that time, Motorsports orally asserted, among other things, that in 2003 FNA had promised to appoint Motorsports as a Ferrari sales dealer if it was a good Maserati dealer.

40.     Motorsports also asserted that it had actually become a Ferrari dealer arising from the following:  In 2003 and 2004, Motorsports or an affiliate acquired several Ferrari vehicles, identifying the purchaser as Bentley St. Louis, by purchasing them from a Ferrari dealership owned by FNA in Mill Valley, California.   These vehicles were then resold at retail by Motorsports, allegedly as used vehicles.  Motorsports asserted that this episode made it an authorized Ferrari dealer for sales and service, although Motorsports had never submitted an application or business plan for a Ferrari sales and service dealership, had never applied for a state license to be a Ferrari sales dealer, and had never received any written authorization from FNA to act as and be subject to all of the obligations of a Ferrari sales dealer.

41.     FNA disputed Motorsports' claims regarding any promises that Motorsports would be appointed as a Ferrari sales dealer and regarding any appointment as a Ferrari sales dealer and reconfirmed to Motorsports that FNA had no plans to appoint or approve Motorsports or anyone else in St. Louis as a Ferrari sales dealer.

42.     In a letter dated December 16, 2010, Motorsports sought to memorialize what it contends was stated at the December 1 meeting.  Motorsports again asserted that in 2003 FNA

promised that Motorsports would be appointed as a dealer authorized to sell new Ferrari vehicles.

43.     FNA responded to Motorsports by letter dated January 12, 2011 stating, among other things, that based on prior communications, including the March 8, 2005 letter from FNA, there was no basis for Motorsports to assert that FNA had promised to appoint it as a Ferrari sales dealer.

44.     Motorsports responded by letter dated February 2, 2011.  Motorsports reiterated its claim that it was promised a Ferrari sales dealership as of 2003 and asserted that Motorsports became a Ferrari sales center as of 2003 by "FNA's course of conduct."

45.     In its February 2nd letter, Motorsports confirmed that it intended to pursue this dispute stating that FNA has left it "no choice other than to turn this issue over to our legal counsel."

46.     Since then, counsel for Motorsports and Holdings contacted FNA outlining the claims which Motorsports and Holdings alleged against FNA.     Counsel for Motorsports/Holdings have asserted that (i) FNA's actions violate 18 U.S.C §1962(c), the civil RICO statute and various state laws; (ii) Holdings owns the property relevant to the threatened claims and owns all of the interest of Motorsports; (iii) FNA has made various oral representations about appointing Motorsports as a Ferrari sales dealer; and (iv) Motorsports and Holdings have each suffered various elements of  damages due to FNA's conduct.

## Count I
## DECLARATORY RELIEF
**Declaration That Neither Motorsports Nor Holdings Is An Authorized Ferrari Sales Dealer and That There is no Obligation by FNA to Appoint Motorsports (or Holdings) As An Authorized Sales Dealer or to Pay Damages to Either.**

47.     FNA realleges and incorporates the previously numbered allegations as if fully set forth herein.

48.     There is a dispute between the parties as to whether Motorsports (or Holdings) is already an authorized Ferrari sales dealer, whether FNA has promised to appoint Motorsports (or Holdings) as a Ferrari dealer, whether FNA is or ever was legally obligated to appoint

Motorsports (or Holdings) as a Ferrari sales dealer, and whether FNA is liable in damages to either Motorsports or Holdings for not appointing Motorsports as an authorized Ferrari sales dealer.

49. Motorsports and Holdings take the position that there is an enforceable agreement pursuant to which Motorsports (or Holdings) is already an approved Ferrari sales dealer, that FNA is obligated to issue to Motorsports (or Holdings) a written dealer agreement for Ferrari sales, and based on the claim that Motorsports (or Holdings) are already an approved Ferrari sales dealer, that FNA has violated various state laws, including the Missouri Motor Vehicle Franchise Practices Act. Motorsports and Holdings also contend that FNA officials made intentional misrepresentations and acted in bad faith in connection with the issue of whether Motorsports (or Holdings) is an authorized Ferrari sales dealer. Motorsports and Holdings assert that FNA is liable to them for damages arising from not being appointed as an authorized Ferrari sales dealer.

50. FNA contends that it never appointed, approved or promised to appoint or approve Motorsports (or Holdings) as an authorized sales dealer of Ferrari vehicles, that FNA has no obligation to treat Motorsports (or Holdings) as an authorized sales dealer or to issue to Motorsports (or Holdings) a Ferrari Sales Agreement, and that FNA has no liability to Motorsports or Holdings for any failure to appoint Motorsports as a Ferrari sales dealer, and further, that any such claims by Motorsports and Holdings are barred by various acts and omissions of Motorsports and Holdings.

51. Based on all of the preceding allegations, a present controversy exists between FNA and Motorsports/Holdings as to whether Motorsports (or Holdings) is an authorized sales dealer of Ferrari vehicles, whether FNA is or ever was obligated to approve and appoint Motorsports (or Holdings) as an authorized sales dealer, whether FNA has violated any state dealer laws and whether FNA is liable in damages for failing to appoint Motorsports as an authorized Ferrari sales dealer.

52.     FNA seeks a declaration that Motorsports (or Holdings) is not an authorized Ferrari Sales Dealer, that there neither is nor ever was any obligation by FNA to appoint Motorsports (or Holdings) as an authorized Sales Dealer, that FNA has not violated any state dealer laws (or other arguably applicable state law) and that FNA is not liable to either Motorsports or Holdings for any damages.

**Count II**
**DECLARATORY RELIEF**
**Declaration That FNA's Conduct Did Not Violate 18 U.S.C. § 1962(c).**

53.     FNA realleges and incorporates the previously numbered allegations as if fully set forth herein.

54.     Motorsports and Holdings contend that by the predicate acts of alleged mail or wire fraud, FNA controlled an enterprise through a pattern of racketeering activity and, thus violated 18 U.S.C. §1962(c), the civil RICO statute, and is liable to them for damages and other relief.

55.     FNA denies all such allegations.  Thus, there is a dispute between the parties as to whether FNA has violated 18 U.S.C. §1962(c).

56.     Based on all of the preceding allegations, a present controversy exists between FNA and Motorsports/Holdings as to whether FNA's actions violate the provisions of, or otherwise creates liability on the part of FNA, under 18 U.S.C. § 1962(c).

57.     FNA seeks a declaration that FNA did not violate 18 U.S.C. § 1962(c) and that FNA has no liability to Motorsports or Holdings for civil RICO.

**Count III**
**DECLARATORY RELIEF**
**Declaration that FNA has no Liability to Motorsports (or Holdings)**
**Under 15 U.S.C. §1221 *et seq*.**

58.     FNA realleges and incorporates the previously numbered allegations as if fully set forth herein.

59.     Motorsports and Holdings contend that FNA has acted in bad faith and made actionable misrepresentations in connection with the issue of Motorsports (or Holdings) alleged status as an authorized Ferrari sales dealer that caused Motorsports (or Holdings) to be damaged.

60.     FNA contends that it made no such misrepresentations, at all relevant times it acted in good faith within the meaning of all relevant laws, including 15 U.S.C. §§1221 *et seq.*, and that Motorsports and Holdings have no actionable claims against FNA under that statute.

61.     Based on all of the preceding allegations, a present controversy exists between FNA and Motorsports/Holdings as to whether FNA acted in good faith or is otherwise liable for under 15 U.S.C. §§1221 *et seq.*

62.     FNA seeks a declaration that it has not acted in violation of 15 U.S.C. §§1221 *et seq.*, and that Motorsports and Holdings have no cause of action against FNA under that statute.

<u>**Count**</u> **IV**
**DECLARATORY RELIEF**
**Declaration That Motorsports' Service-Only Agreement May Be Terminated By FNA**
<u>**Without Liability Upon Notice Effective at the End of the Next Succeeding Month.**</u>

63.     FNA realleges and incorporates the previously numbered allegations as if fully set forth herein.

64.     Motorsports contends that FNA is obligated to appoint Motorsports (or Holdings) a Ferrari sales dealer and issue to Motorsports a Ferrari sales dealer, which would extend the Service-Only Agreement in contravention of its express limitations.

65.     FNA contends that it has the right to terminate the Service-Only Agreement by giving notice effective at the end of the next succeeding month.

66.     Based on all of the preceding allegations, a present controversy exists between FNA and Motorsports as to the terms of the Service-Only Agreement and whether FNA may terminate the month-to-month Service-Only Agreement pursuant to its terms and without liability by giving notice effective at the end of the next succeeding month.

67.     FNA seeks a declaration that FNA has the right to terminate the Service-Only Agreement by giving notice effective at the end of the next succeeding month.

**WHEREFORE**, the Court should declare, pursuant to 28 U.S.C. §2201, that:

a.      Neither Motorsports nor Holdings is or has never been an authorized Ferrari sales dealer;

b.      Neither Motorsports nor Holdings is entitled to be appointed or approved as an authorized sales dealer for Ferrari vehicles;

c.      FNA has not violated and is not liable to Motorsports or Holdings for any violation of 15 U.S.C. §1221-1222, 18 U.S.C. § 1962(c), or any other arguably applicable federal or state law;

d.      Pursuant to its expressed terms, the Service Only Agreement is currently on a month to month basis and may be terminated pursuant to its terms by FNA by giving notice effective at the end of the next succeeding month without liability to Motorsports or Holdings;

e.      FNA is not liable to Motorsports or Holdings for any damages or any other relief; and

f.      FNA be awarded such other and further relief as the Court deems just.

                              **FERRARI NORTH AMERICA, INC.**

                              By its attorneys,

                              */s/ Richard Spitaleri, Jr.*
                              Richard Spitaleri, Jr.
                              **BINGHAM McCUTCHEN LLP**
                              399 Park Avenue
                              New York, NY 10022-4689
                              Tel (212) 705-7000
                              Fax (212) 752-5378

                              and

                              Daniel L. Goldberg
                              John R. Skelton
                              **BINGHAM McCUTCHEN LLP**
                              One Federal Street
                              Boston, MA  02110
                              (617) 951-8000

                              *(Motions for Pro Hac Vice admission to be filed)*
                              *Attorneys for Plaintiff Ferrari North America, Inc.*

Dated:  August 2, 2011